**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ‖ | |
| Plaintiff, | ‖ | No. 17-CR-2045-LRR |
| vs. | ‖ | **ORDER** |
| WILLIAM MARCELLUS CAMPBELL, | ‖ | |
| Defendant. | ‖ | |

### *TABLE OF CONTENTS*

I.   *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *1*

II.  *RELEVANT PROCEDURAL BACKGROUND* . . . . . . . . . . . . . . . . . . . . . *2*

III. *STANDARD OF REVIEW* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*

IV.  *RELEVANT FACTUAL BACKGROUND*. . . . . . . . . . . . . . . . . . . . . . . *3*

V.   *ANALYSIS*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *6*

    *A.*   *Necessity Requirement*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *7*
    *B.*   **Leon** *Good-Faith Exception* . . . . . . . . . . . . . . . . . . . . . . . . . . . . *10*

VI.  *DISPOSITION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *10*

### *I.  INTRODUCTION*

The matter before the court is Defendant William Marcellus Campbell's Objections (docket no. 145) to United States Chief Magistrate Judge C.J. Williams's Report and Recommendation (docket no. 135), which recommends that the court deny Defendant's Motion to Suppress Evidence ("Motion") (docket no. 117).

## II. RELEVANT PROCEDURAL BACKGROUND

On July 10, 2017, a grand jury returned an Indictment[1] (docket no. 8) charging Defendant with one count of conspiracy to distribute cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 846, and two counts of distribution of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(c)(1)(C). *See* Indictment at 2-3, 5, 8. On December 26, 2017, Defendant filed the Motion. On January 2, 2018, the government filed a Resistance (docket no. 127). On January 17, 2018, Judge Williams held a hearing ("Hearing") on the Motion. *See* January 17, 2018 Minute Entry (docket no. 131). Defendant appeared in court with his attorney, Clemens Erdahl. Assistant United States Attorney Emily Nydle represented the government. The Hearing on the issues raised in the Motion was very brief. The Magistrate Judge relied on the information within the four corners of the application for a Title III wiretap order ("Application")[2] (docket no. 127-1) in arriving at his decision. On January 22, 2018, Judge Williams issued the Report and Recommendation, which recommends that the court deny the Motion. On February 5, 2018, Defendant filed the Objections. The matter is fully submitted and ready for decision.

## III. STANDARD OF REVIEW

When a party files a timely objection to a magistrate judge's report and recommendation, a "judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which

---

[1]On February 22, 2018, the government filed a Superseding Indictment (docket no. 170). The charges against Defendant remain unchanged. *Compare* Indictment at 2-3, 5, 8, *with* Superseding Indictment at 2-3, 6. The Superceding Indictment, therefore, has no effect on the Motion.

[2]The Application was supported by an "Affidavit in Support of Application" ("Affidavit"). *See* Application at 15-65. References to the Application in this opinion incorporate the Affidavit and the testimony contained therein.

objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Crim. P. 59(b)(3) ("The district judge must consider de novo any objection to the magistrate judge's recommendation."); *United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003) (noting that a district judge must "undertake[] a de novo review of the disputed portions of a magistrate judge's report and recommendations"). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Crim. P. 59(b)(3) ("The district judge may accept, reject, or modify the recommendation, receive further evidence, or resubmit the matter to the magistrate judge with instructions."). It is reversible error for a district court to fail to engage in a de novo review of a magistrate judge's report when such review is required. *Lothridge*, 324 F.3d at 600. Accordingly, the court reviews the disputed portions of the Report and Recommendation de novo.

## IV. *RELEVANT FACTUAL BACKGROUND*[3]

On October 24, 2016, the court issued a Title III wiretap order ("Order") authorizing the interception of communications over two target telephones ("TT3" and "TT4") that allegedly belonged to Defendant. Assistant United States Attorney Ravi T. Narayan submitted the Application, which was supported by the Affidavit, which contained sworn testimony from DEA Task Force Officer Bryan Furman. *See* Application at 15-65. The testimony from Officer Furman addressed the existence of probable cause for the issuance of the Order, the exhaustion of other investigatory methods that investigators had previously attempted and the nonviability of additional investigatory methods that were not attempted by investigators.

---

[3] After reviewing the Hearing Transcript (docket no. 150), the court finds that Judge Williams accurately and thoroughly set forth the relevant facts in the Report and Recommendation. *See* Report and Recommendation at 2-9. Therefore, the court shall only briefly summarize the facts here. When relevant, the court relies on and discusses additional facts in conjunction with its legal analysis.

Officer Furman testified in the Application that on June 7, 2016 Defendant used TT3 to contact a confidential source to arrange a drug transaction. During a controlled buy, the confidential source purchased 3.5 grams of crack cocaine from Defendant. The confidential source also informed investigators that he had previously purchased drugs from Defendant on multiple occasions. On September 19, 2016, investigators arranged for co-defendant Alexander Martin ("Martin"), who at that time was cooperating with the investigation, to make a controlled purchase from Defendant. While arranging the sale with Martin, Defendant used both TT3 and TT4. The same day, Martin purchased 3.5 grams of crack cocaine from Defendant during the controlled buy. Investigators had previously identified Martin, through investigation and his own admission, as a retail-level distributor in a drug organization. Investigators had gathered evidence indicating that both Martin and Defendant worked under the direction of co-defendant Alston Campbell, Jr. ("Campbell, Jr.").

Before seeking the Order, investigators had utilized multiple techniques to gather information about Campbell, Jr.'s drug organization, but had been unable to achieve the full goals of the investigation. For example, investigators had not determined the scope of the drug organization, identified its suppliers and primary customers, located its inventory or uncovered its financial workings. Investigators had previously engaged two members of the drug organization as cooperators that provided information and participated in controlled payments and purchases. Martin, the first cooperator, led investigators to his supplier, co-defendant John Dwayne Phillips ("Phillips"), who also cooperated with investigators. Martin and Phillips, however, both continued to participate in uncontrolled criminal activity. Martin's and Phillips's lack of compliance with the terms of their cooperation agreement forced investigators to stop using them as cooperators because it indicated that they could no longer be trusted to participate in the investigation

without exposing it. Investigators had not been able to develop any other confidential sources from within the drug organization.

Investigators employed a number of additional practices before seeking the Order, and those practices had already provided all of the useful information they could. For example, surveillance had aided in identifying retail-level distributors within the drug organization, but was unable to lead investigators to the source of its supply. Cell site location had allowed investigators to track the movements of individuals, but only while they were using their cell phones; officers could not predict nor fully track their actions. Pen registers had established that communications occurred and between which phone numbers, but they did not reveal the contents of those communications. Trash searches had provided no useful evidence. Executing search warrants yielded some results, but investigators had been unable to identify major inventory locations, and the execution of additional warrants risked exposing the larger investigation. If investigators continued to use these methods, they were unlikely to gain any additional evidence about the drug organization, and might have harmed the investigation by exposing it.

Officer Furman also addressed other investigative techniques that had not been attempted but which investigators did not believe would prove fruitful. For example, a financial investigation using subpoenas and search warrants would only have been possible after investigators had identified the location of the drug organization's funds. Undercover agents were unlikely to penetrate the drug organization to the level where they could provide information about its higher-ranking individuals. Investigators believed that field interviews and grand-jury subpoenas of persons associated with the drug organization were of limited value because anyone interviewed would have a strong incentive to provide false information to investigators. Further, the individuals questioned by investigators might alert other members of the drug organization about the investigation. Accordingly, the low chance of success did not justify the high risk.

The court considered the totality of Officer Furman's testimony and found that probable cause to issue the Order had been established. The court also found that a wiretap order was necessary to the investigation because viable alternative investigative means had been exhausted. The court, therefore, issued the Order. Over the course of the next several months, investigators sought four extensions of the Order with respect to TT3; investigators did not seek to continue intercepting communications of TT4. Each subsequent application to extend the Order relied, in part, on evidence intercepted pursuant to the Order and any extensions thereof.

## V. ANALYSIS

Defendant enumerates three objections to the Report and Recommendation. First, Defendant objects generally "to Sections II, III and IV of the Report and Recommendation." Objections at 1. Section II of the Report and Recommendation contains a statement of the law that is generally applicable to the case. Section III contains Judge Williams's analysis of the specific issues in the case at bar. Section IV contains a brief statement of his conclusions. *Id.* Second, Defendant objects specifically to Judge Williams's factual determination, in Section III(A), that the necessity requirement of 18 U.S.C. § 2518 was satisfied when the Order was issued. *Id.* Third, Defendant objects to Judge Williams's legal conclusion in Section III(B) that the *Leon* good-faith exception would prevent suppression even if the Order were invalid. Although Defendant articulates these as three objections, Defendant's Brief in Support of Objections (docket no. 145 at 3-10) only addresses his objections to Sections III(A) and III(B). By not making a specific objection, and not briefing and arguing the objection, to Section II, Defendant has waived his objection and his right to a de novo review of that portion of the Report and Recommendation. *See Branch v. Martin*, 886 F.2d 1043, 1046 (8th Cir. 1989) (holding that objections to a magistrate judge's report and recommendation must be sufficiently timely and specific in order to trigger a de novo review by the district court). Therefore,

the court shall conduct a de novo review of Sections III(A) and III(B) of the Report and Recommendation. The court shall address each objection in turn.

## A. Necessity Requirement

A Title III wiretap order may only be issued in situations in which "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(3)(c). "If law enforcement officers are able to establish that conventional investigatory techniques have not been successful in exposing the full extent of the conspiracy and the identity of each coconspirator, the necessity requirement is satisfied." *United States v. Turner*, 781 F.3d 374, 382 (8th Cir. 2015) (quoting *United States v. West*, 589 F.3d 936, 939 (8th Cir. 2009)). The facts establishing the necessity of the wiretap and the exhaustion of alternatives must be present on the face of the application. *See* 18 U.S.C. § 2518(3)(c).

The court is satisfied that the Application demonstrates necessity on its face. The Application thoroughly sets forth the history of the investigation. Investigators had tried a number of less-intrusive techniques to gather the necessary information, including confidential sources, cooperating witnesses, surveillance and electronic tracking. The Application is clear that the investigators had exhausted the usefulness of those methods, and that there were no viable alternatives. Moreover, "the necessity requirement does not mandate that the government 'exhaust all possible techniques before applying for a wiretap.'" *United States v. Colbert*, 828 F.3d 718, 725 (8th Cir. 2016) (quoting *United States v. Macklin*, 902 F.2d 1320, 1326 (8th Cir. 1990)). Rather, "[the] necessity requirement prevents the government from routinely using wiretaps 'as the initial step in an investigation.'" *Id*. (quoting *United States v. Thompson*, 210 F.3d 855, 858-59 (8th Cir. 2010)). The facts in this case clearly establish that a wiretap was not an initial step for the investigators, but one that they only sought after other investigative techniques did not achieve the goals of the investigation.

Defendant, however, objects to Judge Williams's conclusion that the Application demonstrated necessity because it does not state that Defendant and Campbell, Jr. have a familial relationship. *See* Objections at 8-9. Defendant contends that the familial relationship between Defendant and Campbell, Jr. was the investigators' motivation for seeking a wiretap on Defendant's phone, as opposed to other targets, and that the failure to disclose this motivation is fatal to the Order. *See id.* ("[T]he Government and its agents denied the independent Magistrate the opportunity to determine whether familial relationship was an acceptable basis for satisfying the necessity requirement[.]"). Defendant contends that "the targeting of individuals primarily because they are family members is an unconstitutional slippery slope." *Id.* at 4. Defendant cites no case law suggesting that the subjective motivation of law enforcement is relevant to a determination of necessity.

Defendant's argument is misplaced. The court must evaluate whether the Application on its face met the necessity requirement. *See United States v. Gonzalez Inc.*, 412 F.3d 1102, 1112 (9th Cir. 2005) ("Only the evidence presented within the four corners of the wiretap application can be used to evaluate necessity."). Counsel for Defendant conceded this point at the Hearing. *See* Hearing Transcript at 4. Defendant also cited the above passage of *Gonzalez* in his Brief in Support of the Motion ("Brief") (docket no. 118). *See* Brief at 12. The issue of Defendant and Campbell, Jr.'s familial relationship is absent from the Application. Instead, it was raised for the first time by the government its Resistance. *See* Resistance at 13 (citing "the potential familial relationship [between Defendant and Campbell, Jr.] based on a shared last name" as evidence that the Order was necessary). This extra-textual issue is not an appropriate consideration in evaluating the necessity requirement.

Omissions from a facially sufficient warrant may only form the basis of a challenge to that warrant where "the police omitted facts with the intent to make, or in reckless

disregard of whether they thereby made, the affidavit misleading, and . . . the affidavit if supplemented by the omitted information would not have been sufficient to support a finding of probable cause." *United States v. Reivich*, 793 F.2d 957, 961 (8th Cir. 1986) (citations omitted). Defendant bears the burden of proving both of these elements. *Id*. Here, Defendant has not pled, let alone proven, either element. The court finds that there is nothing in the record to indicate that this omission was made with the intent to mislead. Moreover, the familial relationship between Defendant and Campbell, Jr. does not diminish the validity of the Order.

The "unconstitutional slippery slope" to which Defendant objects is a matter of probable cause, not one of necessity. If investigators sought the Order solely because of Defendant's relationship to Campbell, Jr., without any other probable cause, that could raise constitutional concerns. That did not occur in this case. Neither the Motion nor the Objections allege that the Application lacked probable cause. The court also finds that the Application presented facts establishing probable cause to issue the Order. Investigators had information from confidential sources as to Defendant's drug activity and engaged in two controlled buys with Defendant, during which he used the target phones. This is sufficient probable cause to meet the requirements of the statute. *See United States v. Thompson*, 690 F.3d 977, 984-85 (8th Cir. 2012) ("The probable cause requirement in [18 U.S.C. § 2518] is linked to the Fourth Amendment. Thus, to grant an application for a wiretap, district courts must make a 'practical, common-sense decision whether,' considering the 'totality-of-the-circumstances . . . there is a fair probability that contraband or evidence of a crime will be found . . . .'") (second alteration in original) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). Accordingly, Defendant's objection is overruled.

### B. Leon *Good-Faith Exception*

Defendant objects to Judge Williams's legal conclusion that, even if the Application did not establish necessity, the *Leon* good-faith exception would save the fruits of the Order from suppression. After engaging in a de novo review, the court finds that it is unnecessary to decide whether *Leon* would apply if the necessity requirement had not been met, because the court is satisfied that the necessity requirement of the Application was met. The court finds no need to analyze of the applicability of the *Leon* good-faith exception. The court declines to adopt Section III(B) of the Report and Recommendation. Therefore, Defendant's objection is overruled as moot.

## VI. DISPOSITION

In light of the foregoing, the court **ORDERS**:

(1)     The Objections (docket no. 145) are **OVERRULED**;

(2)     The Report and Recommendation (docket no. 135) is **ADOPTED IN PART**; and

(3)     The Motion to Suppress (docket no. 117) is **DENIED**.

**IT IS SO ORDERED.**

**DATED** this 3rd day of March, 2018.

LINDA R. READE, JUDGE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA