# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | No. 17-CR-2045-LRR |
| vs. | **ORDER** |
| WILLIAM MARCELLUS CAMPBELL, | |
| Defendant. | |

_____

### TABLE OF CONTENTS

*I.*     *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *1*
*II.*    *RELEVANT PROCEDURAL HISTORY* . . . . . . . . . . . . . . . . . . . . . *1*
*III.*   *RELEVANT TRIAL EVIDENCE* . . . . . . . . . . . . . . . . . . . . . . . . . *2*
*IV.*  *STANDARD OF REVIEW* . . . . . . . . . . . . . . . . . . . . . . . . . . . . *3*
*V.*    *ANALYSIS.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *4*
    *A.*     *Cross Examination* . . . . . . . . . . . . . . . . . . . . . . . . . . *5*
    *B.*     *Transcript* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *6*
    *C.*     *Jury Instructions* . . . . . . . . . . . . . . . . . . . . . . . . . . . *7*
    *D.*     *Sufficiency of the Evidence* . . . . . . . . . . . . . . . . . . . . . *9*
*VI.*  *CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *11*

### *I. INTRODUCTION*

The matter before the court is Defendant William Marcellus Campbell's "Motion for Acquittal or New Trial" ("Motion") (docket no. 306).

### *II. RELEVANT PROCEDURAL HISTORY*

On February 22, 2018, a grand jury returned a Superseding Indictment (docket no. 170) charging Defendant with one count of conspiracy to distribute cocaine and cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 846, and two counts of distribution of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). *See*

Superseding Indictment at 2-3, 6. On April 20, 2018, a jury trial commenced. *See* April 20, 2018 Minute Entry (docket no. 259). On April 27, 2018, the jury returned verdicts finding Defendant guilty on Counts 1, 4 and 12 of the Superseding Indictment. *See* Jury Verdict (docket no. 277) at 9-12, 14-15. The jury also found that the objects of the conspiracy as committed by Defendant were to distribute at least five kilograms of cocaine and at least 280 grams of cocaine base. *See id*. at 11-12. On May 11, 2018, Defendant filed the Motion. On May 25, 2018, the government filed a Resistance (docket no. 315). The matter is fully submitted and ready for decision.

### III. RELEVANT TRIAL EVIDENCE

Viewed in the light most favorable to the verdict, the relevant trial evidence is as follows:

In 2016, law enforcement began investigating Defendant, as part of a larger narcotics investigation. On June 7, 2016, J.S., a cooperating individual, made a controlled purchase of approximately three grams of cocaine base from Defendant. Law enforcement observed the sale and identified Defendant as the seller. J.S. carried an audio recording device that captured the audio of the controlled buy, although background music limits the dialog that can be heard. On September 19, 2016, A.M., another cooperator, made a controlled purchase of approximately three grams of cocaine. Law enforcement captured and recorded A.M.'s calls and text messages to Defendant setting up the controlled buy. Law enforcement also observed the controlled buy and identified Defendant.

Additional evidence connected Defendant to a larger drug conspiracy. Two additional cooperating witnesses testified that they had received significant quantities of cocaine and cocaine base from Defendant that they later sold at the retail level. Law enforcement also set up a Title III wiretap on Defendant's phones, intercepting his calls and text messages. Defendant used coded language to communicate with numerous individuals, including his brother, co-defendant Alston Ray Campbell, Jr., and his father,

co-defendant Alston Ray Campbell, Sr., about their drug business. They used seemingly innocuous references to things such as food and clothing, but in ways that did not make sense in the context of the conversation. Task Force Officer Bryan Furman testified that this indicated that the conversation was actually about narcotics. Officer Furman explained that this kind of coded language is frequently used by narcotics traffickers who are concerned that their communications may be intercepted by law enforcement. Defendant's communications indicated that he was supplying multiple retail drug dealers with cocaine and cocaine base. On one occasion, Defendant attempted to purchase a pound of cocaine from a major supplier in Chicago.

## IV. STANDARD OF REVIEW

Federal Rule of Criminal Procedure 33 provides that, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). "The decision to grant a Rule 33 motion is within the sound discretion of the [d]istrict [c]ourt . . . ." *United States v. Amaya*, 731 F.3d 761, 764 (8th Cir. 2013) (quoting *United States v. Dodd*, 391 F.3d 930, 934 (8th Cir. 2004)). "When considering a motion for [a new] trial, a district court may 'weigh the evidence, disbelieve witnesses, and grant a new trial even where there is substantial evidence to sustain the verdict.'" *Id.* (quoting *United States v. Campos*, 306 F.3d 577, 579 (8th Cir. 2002)). However, "[m]otions for new trials are generally disfavored and will be granted only where a serious miscarriage of justice may have occurred." *United States v. Morris*, 817 F.3d 1116, 1121 (8th Cir. 2016) (quoting *United States v. Fetters*, 698 F.3d 653, 656 (8th Cir. 2012)). "Trial courts should 'exercise the Rule 33 authority sparingly and with caution.'" *United States v. Knight*, 800 F.3d 491, 504 (8th Cir. 2015) (quoting *Campos*, 306 F.3d at 579).

Federal Rule of Criminal Procedure 29 provides that "the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is

insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). Such a motion is permitted after trial, in which case the court may set aside the verdict and enter a judgment of acquittal. *See* Fed. R. Crim. P. 29(c). Jury verdicts are not lightly overturned. *See, e.g.*, *United States v. Peneaux*, 432 F.3d 882, 890 (8th Cir. 2005); *United States v. Stroh*, 176 F.3d 439, 440 (8th Cir. 1999). The court must "view the evidence in the light most favorable to the jury's verdict and draw all reasonable inferences in the government's favor." *United States v. Peters*, 462 F.3d 953, 957 (8th Cir. 2006). The court must uphold the jury's verdict so long as a reasonable-minded jury could have found the defendant guilty beyond a reasonable doubt. *See id*. Moreover, the court "must uphold the jury's verdict even where the evidence 'rationally supports two conflicting hypotheses' of guilt and innocence." *Id*. (quoting *United States v. Serrano-Lopez*, 366 F.3d 628, 634 (8th Cir. 2004)). It is not the province of the court to evaluate the credibility of witnesses—that task is for the jury. *See United States v. Hayes*, 391 F.3d 958, 961 (8th Cir. 2004).

## V. ANALYSIS

In the Motion, Defendant makes four arguments. First, Defendant argues that the court should grant him a new trial because he "was deprived of his right to []fully and meaningfully conf[r]ont the witnesses against [him] regarding the benefits of their plea agreements." Brief in Support of Motion (docket no. 306-1) at 2. Second, Defendant argues that the court should grant him a new trial due to "the actions of the [government] in publishing an incorrect transcript in derogation of a stipulation with . . . Defendant." *Id*. at 5. Third, Defendant argues that the court should grant him a new trial because he "was denied an appropriate instruction concerning multiple conspiracies based on the evidence." *Id*. at 9. Finally, Defendant argues that the evidence presented against him at trial was insufficient to sustain a conviction, and asks the court to grant him a judgment of acquittal or, in the alternative, a new trial. *See id*. at 13-15. The court shall address

4

each argument in turn.

### A. Cross Examination

During trial, Defendant "joined in . . . Campbell Jr.'s request that the plea agreements of the cooperating witnesses be admitted into evidence." *Id*. at 2. The court denied the request. Defendant now argues that the court's decision "deprived [him] of his right to []fully and meaningfully conf[r]ont the witnesses against [him]." *Id*. Defendant acknowledges that his argument runs counter to Eighth Circuit case law. *See id*. at 3-5; *see also United States v. Wright*, 866 F.3d 899, 906 (8th Cir. 2017) (holding that a district court does not abuse its discretion when it excludes details of a cooperating witness's plea agreement where such evidence would not have given the jury "a significantly different impression of the witness's credibility" (quoting *United States v. Dunn*, 723 F.3d 919, 934 (8th Cir. 2013))), cert. denied ___ U.S. ___, 138 S. Ct. 2026 (2018). Defendant, however, argues that the issue is "unclear nationally" because *Wright* conflicts with the Ninth Circuit Court of Appeals case *United States v. Larson*, 495 F.3d 1094 (9th Cir. 2007) (en banc), and because *Wright* "is currently being briefed to the United States Supreme Court on whether a [w]rit of [c]ertiorari should be granted." Brief in Support of Motion at 3-5.

The court declines to adopt the reasoning of the Ninth Circuit Court of Appeals. The court notes that the United States Supreme Court denied certiorari in *Wright*. *See Wright v. United States*, 138 S. Ct 2026. Additionally, in *Wright*, the Eighth Circuit Court of Appeals specifically rejected the Ninth Circuit's approach in *Larson*. *See Wright*, 866 F.3d at 906-07. In this case, Defendant was able to cross-examine the cooperating witnesses about their plea agreements and the fact that they were facing significant potential sentences and/or mandatory minimum sentences without those agreements. The court finds that entering the plea agreements into evidence would not have given the jury a significantly different impression of the witnesses' credibility. *See Wright*, 866 F.3d at

906. Therefore, the documents were properly excluded. Accordingly, the court shall deny the Motion as to this issue.

## B. Transcript

Defendant argues that the court erred in denying his motion for a mistrial and should now grant him a new trial due to "the actions of the [government] in publishing an incorrect transcript in derogation of a stipulation with . . . Defendant." Brief in Support of Motion at 5. During the testimony of Officer Furman, the government entered into evidence Exhibit 403, a recorded conversation between Defendant and co-defendant Willie Junior Carter. While playing the call, the government inadvertently displayed the wrong transcript, showing Exhibit 403A (docket no. 275-142), rather than Exhibit 403B (docket no. 275-143), which the government and Defendant had stipulated would be used.[1] Defendant did not object at the time the transcript was displayed. Later, Defendant brought the issue to the court's attention and moved for a mistrial, which the court denied. Defendant now argues that the display of Exhibit 403A "violated [his] rights to due process and to effective representation of counsel." *Id*. at 9.

Federal Rule of Evidence 103 requires a party to "timely object[]" in order to preserve a claim of error. Fed. R. Evid. 103(a)(1)(A). "The rule is well settled in this circuit that for an objection to be timely it must be made at the earliest possible opportunity after the ground of objection becomes apparent, or it will be considered waived." *United States v. Adejumo*, 772 F.3d 513, 524 (8th Cir. 2014) (quoting *Terrell v. Poland*, 744 F.2d 637, 638-39 (8th Cir. 1984)); *see also McKnight ex rel. Ludwig v. Johnson Controls, Inc.*, 36 F.3d 1396, 1407-08 (8th Cir. 1994) (holding that the Federal Rules of Evidence require

---

[1] Exhibits 403A and 403B are transcripts of the same conversation, but differ with respect to a single line of dialog. Exhibit 403A indicates that the caller stated to Defendant, "I need, uh . . . two," whereas Exhibit 403B indicates that this line is unintelligible. *Compare* Exhibit 403A *with* Exhibit 403B. Officer Furman testified to his opinion that the caller was attempting to purchase two ounces of cocaine from Defendant.

a "contemporaneous" objection to preserve error). Defendant failed to object until well after the offending exhibit had been displayed and all testimony regarding it had concluded. Defendant has, therefore, waived any objection as to this issue.

Moreover, any prejudice Defendant may have suffered due to the display of Exhibit 403A was minimal because Exhibit 403A was not admitted into evidence, but merely displayed as a demonstrative during testimony. Additionally, any such prejudice was cured by the court's remedial action. After Defendant raised the issue, the government replayed Exhibit 403 while displaying the agreed-upon transcript, Exhibit 403B. Officer Furman testified that the earlier transcript had been incorrect and that 403B was the correct transcript. At that time, the court admonished the jury that only the audio recordings, not the transcripts, were evidence, and that their deliberations should be based on the recordings. "'[A] cautionary instruction [is] generally sufficient to alleviate prejudice' stemming from improperly admitted evidence." *United States v. Big Eagle*, 702 F.3d 1125, 1132 (8th Cir. 2013) (alterations in original) (quoting *United States v. Diaz-Pellegaud*, 666 F.3d 492, 503 (8th Cir. 2012)). Therefore, the court's instruction was sufficient to cure any prejudice that Defendant suffered from the display of Exhibit 403A. Accordingly, the court shall deny the Motion as to this issue.

### C. Jury Instructions

Prior to trial, Defendant requested that jury instructions include a version of Eighth Circuit Model Criminal Jury Instruction 5.06B ("Multiple Conspiracies Instruction"). *See* Proposed Jury Instructions (docket no. 249) at 48-49. The court found that the Multiple Conspiracies Instruction was not supported by the evidence and declined to include it in the jury instructions. Defendant now asserts that the evidence indicated that "cooperating witness [N.S.] was a member of another conspiracy" and that there was "evidence of [Defendant] having had transactions with [N.S.]." Brief in Support of Motion at 13. Defendant argues that the court's refusal to give the Multiple Conspiracies Instruction "hampered . . . his theory of defense that he was not a part of [the] co-

defendants' grand scheme." *Id*. at 12.

"A defendant is entitled to a specific jury instruction 'that conveys the substance of his request if his request is timely, it is supported by evidence in the case, and is a correct statement of the law.'" *United States v. King*, 898 F.3d 797, 807 (8th Cir. 2018) (quoting *United States v. Cruz-Zuniga*, 571 F.3d 721, 725 (8th Cir. 2009)). "When the evidence supports the existence of a single conspiracy, a court does not err in denying a request for a multiple conspiracy instruction." *United States v. Perez-Trevino*, 891 F.3d 359, 372 (8th Cir. 2018). "A single conspiracy is not converted to multiple conspiracies simply because different defendants enter a conspiracy at different times or perform different functions. Nor does 'the fact that different individual defendants . . . participated in numerous separate transactions . . . convert a single conspiracy to multiple conspiracies.'" *Id*. (second alteration in original) (citations omitted) (quoting *United States v. Maza*, 93 F.3d 1390, 1398-99 (8th Cir. 1996)). "Whether trial evidence established a single conspiracy is determined by the totality of the circumstances, including consideration of the nature and location of activities and events, identities of the co-conspirators, and the time frame in which the acts occurred." *United States v. Trotter*, 837 F.3d 864, 869 (8th Cir. 2016) (quoting *United States v. Sanchez*, 789 F.3d 827, 835 (8th Cir. 2015)).

In this case, the evidence supported the existence of a single conspiracy. The witnesses described a conspiracy to distribute cocaine and cocaine base. All of the activities described took place in and around Waterloo, Iowa, or were in furtherance of distributing cocaine and cocaine base in Waterloo, Iowa. The conspiracy was ongoing from mid-2015 until early 2017. There were numerous individuals involved in the conspiracy, including many of the cooperating witnesses, but Defendant, Campbell, Jr. and Campbell, Sr. were consistently described as the central figures of the conspiracy. Defendant asserts, without evidence, that "cooperating witness [N.S.] was a member of another conspiracy." Brief in Support of Motion at 13. Contrary to Defendant's assertion, N.S. testified that he repeatedly purchased narcotics from both Campbell, Jr.

8

and Defendant. The evidence did not support the existence of multiple conspiracies, and the court correctly declined to give the Multiple Conspiracies Instruction.

Defendant also argues that without the Multiple Conspiracies Instruction he was "hampered in his theory of defense" because the "evidence against [Defendant] was much more limited in scope" than the evidence against his co-defendants. *Id*. at 12. Defendant claims that Officer Furman "admitted [Defendant] was a low level retail dealer" and "testified, in essence, [that] [Defendant] was an addict, a user of cocaine who occasionally sold drugs." *Id*. Defendant grossly misstates the trial testimony. Although there was some limited evidence that Defendant used narcotics, there was no evidence that he was an addict. Moreover, far from indicating that Defendant was a low level retail dealer, the evidence at trial indicated that Defendant was a major narcotics trafficker. Multiple witnesses described receiving significant quantities of narcotics from Defendant that they themselves later sold on a retail level. Wiretap evidence revealed that Defendant regularly trafficked in wholesale levels of narcotics, including one instance in which he attempted to purchase a pound of cocaine from a supplier in Chicago. Defendant's assertion that the evidence showed that he was a drug addict and small-time player unrelated to an ongoing conspiracy is without basis in the record. His argument that his theory of defense was hampered by the court's refusal to give the unwarranted Multiple Conspiracies Instruction is without merit. Accordingly, the court shall deny the Motion as to this issue.

### D. *Sufficiency of the Evidence*

At the close of the government's case, Defendant timely moved for a judgment of acquittal under Federal Rule of Criminal Procedure 29(a). Defendant now renews his motion. Defendant asserts that "[i]n Count 1, the [g]overnment failed to present sufficient evidence that [he] ever reached an agreement for the purpose of distributing cocaine or cocaine base." *Id*. at 14. Defendant also asserts that "[i]n Count 4 and Count 12, the [g]overnment failed to present sufficient evidence that [Defendant] knowingly possessed or intended to distribute cocaine." *Id*. Defendant offers no argument as to how the

government's evidence was insufficient.  Defendant alternatively moves the court for a new trial based on the weight of the evidence.  *See id*. at 14-15  Defendant offers no additional argument for why the court should grant a new trial, but instead asks the court to weigh the evidence and evaluate its sufficiency under the standard of Federal Rule of Criminal Procedure 33.  *See id*.

The court finds that the government presented sufficient evidence to support the verdicts on all counts.  With respect to Count 1, wiretap recordings and cooperator testimony provided ample evidence that Defendant reached an agreement to distribute cocaine and cocaine base.  Defendant made repeated sales of narcotics to retail-level distributors, discussed the business with his co-conspirators using coded language and attempted to make at least one major purchase of cocaine to supply the business with product.  With respect to Counts 4 and 12, the government offered clear evidence that Defendant distributed cocaine and cocaine base.  J.S. testified to purchasing cocaine base from Defendant and A.M. testified to purchasing cocaine from Defendant.  Both transactions were observed by law enforcement and audio recorded, and the narcotics from both transactions were impounded by law enforcement.  Taking all inferences in the light most favorable to the verdict, the court finds that a reasonable-minded jury could have found Defendant guilty beyond a reasonable doubt of Counts 1, 4 and 12.  *See Peters*, 462 F.3d at 957.

The court also finds that the evidence was sufficient such that Defendant is not entitled to a new trial.  "Motions for new trials based on the weight of the evidence are generally disfavored."  *Campos*, 306 F.3d at 579.  The "court should grant a new trial only if 'the evidence weighs heavily enough against the verdict that a miscarriage of justice may have occurred.'"  *Peters*, 462 F.3d at 957 (quoting *United States v. Rodriguez*, 812 F.2d 414, 417 (8th Cir. 1987)).  The court has weighed the evidence against Defendant and finds that it does not weigh heavily enough against the verdict to warrant a new trial.  No miscarriage of justice occurred.  Accordingly, the court shall deny the Motion as to the

issue of sufficiency of the evidence.

## *VI. CONCLUSION*

In light of the foregoing, the Motion (docket no. 306) is **DENIED**.

**IT IS SO ORDERED**.

**DATED** this 20th day of September, 2018.

*[signature]*
LINDA R. READE, JUDGE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA